JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Michael Grant ("defendant"), appeals from his convictions for burglary and gross sexual imposition. For the reasons that follow, we affirm.
 {¶ 2} In the early morning hours of August 31, 2004, the victim was asleep in the living room of her mother's house. She was awakened by somebody touching her thigh. She found defendant, whom she knew, in the living room. Defendant had worked on the house as a handyman. He did not have permission to be in the house this particular evening. Defendant denied being present.
 {¶ 3} When the victim began yelling, defendant ran out the back door. The victim was able to see his face and recognized him immediately. She was 100% certain he was the perpetrator. She called the police, informed them of the incident, and gave them defendant's phone number. Police took her to a nearby location where she positively identified defendant.
 {¶ 4} The victim's cousin was also sleeping in the living room that evening. She awoke as the victim was screaming defendant's name. She then saw defendant jump over her head and go out the back door. She also knew defendant prior to this incident.
 {¶ 5} Defendant moved to suppress the pre-trial identification. After a hearing, the trial court denied the motion because the victim was "rock solid certain who did it." She identified the perpetrator to the police by name and phone number.
 {¶ 6} At trial, the defense maintained it was a case of mistaken identity and that defendant was not present at the victim's house. Defense counsel argued that defendant was not the perpetrator that ran from the house because he had a fractured leg. The State presented testimony from the victim, her cousin, the victim's mother, and two police officers. Beyond that previously set forth herein, the evidence contained a discrepancy over which lights were on in the house at the time of the incident. Also, the victim recalled the perpetrator as wearing certain clothing, including a hat and a striped shirt. At the time police apprehended defendant, he was naked in his bed. Police were unable to find clothing matching the description in defendant's room. No fingerprints were taken from the scene because the victim identified defendant as the perpetrator and because the defendant had done work at the house as a handyman.
 {¶ 7} The sole defense witness was a medical records supervisor at the Cuyahoga County Correctional Center. She identified defendant's medical records that indicated he had a fractured ankle on September 3, 2004. An October 3, 2004 report indicated that defendant's cast fell apart in two spots and a December 7, 2004 report indicated the injury had healed.
 {¶ 8} The trial court denied defendant's motions of acquittal and his request for a jury instruction on the lesser included offense of sexual imposition. The jury found defendant guilty. The defendant now appeals raising five assignments of error for our review.
 {¶ 9} "I. The trial court erred when it overruled appellant's motion to suppress identification testimony."
 {¶ 10} In his first assignment of error, defendant argues that the trial court improperly denied his motion to suppress. Specifically, defendant claims that the use of a cold stand was unreliable and impermissibly suggestive. We disagree.
 {¶ 11} A cold stand or one-on-one show-up identification is permissible as long as the trial court considers the following factors:
 {¶ 12} "1. The opportunity of the witness to view the criminal at the time of the crime;
 {¶ 13} "2. The witness' degree of attention;
 {¶ 14} "3. The accuracy of the witness' prior description of the criminal;
 {¶ 15} "4. The level of certainty demonstrated by the witness;
 {¶ 16} "5. The length of time between the crime and the confrontation." State v. Freeman, Cuyahoga App. No. 85137,2005-Ohio-3480, ¶ 20; State v. Rogers (Nov. 16, 2000), Cuyahoga App. No. 77723, citing State v. Madison (1980),64 Ohio St.2d 322, citing Neil v. Biggers (1972), 409 U.S. 188.
 {¶ 17} Here, the victim and her cousin had the opportunity to view the defendant while he was in the house. The time period between the crime and identification took about one hour. The victim knew defendant, recognized him, and was certain of her identification of him. Likewise, the victim's cousin knew defendant and recognized him that night in the house.
 {¶ 18} That the victim and her family knew defendant prior to the date of the offense enhances the reliability of their identification of him as the perpetrator. State v. Barnett
(1990), 67 Ohio App.3d 760 ("One of the strongest of these external factors which may be used to prove the accuracy of the identification is the situation where the witness already knew the perpetrator before the crime was committed"); State v.Green, Montgomery App. No. 19224, 2003-Ohio-5744, ¶ 7, citingState v. Huff (2001), 145 Ohio App.3d 555, 564, ("A strong showing of reliability can arise from the fact that a victim knew the perpetrator of a crime before the crime was committed");State v. Young (April 12, 2001), Cuyahoga App. No. 78058.
 {¶ 19} Under these circumstances, we find the identification of the defendant was reliable and the cold stand was not impermissibly suggestive. Accordingly, the trial court did not err by denying defendant's motion to suppress.
 {¶ 20} Assignment of Error I is overruled.
 {¶ 21} "II. The trial court erred and denied appellant his constitutional right to due process when it denied defense counsel's request for a lesser included jury instruction."
 {¶ 22} "[A] criminal defendant is entitled to an instruction on a lesser included offense whenever the trial court: (1) determines that the offense on which the instruction is requested is necessarily lesser than and included within the charged offense, * * *; and (2) after examining the facts of the case, ascertains that the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater." State v. Johnson, 36 Ohio St.3d 224, 225.
 {¶ 23} A defendant who asserts an affirmative defense is not entitled to an instruction on a lesser included offense "unless the trier of fact could reasonably reject an affirmative defense and could reasonably find against the State and for the accused upon one or more of the elements of the crime charged, and for the State and against the accused on the remaining elements, which by themselves would sustain a conviction upon a lesser included offense.'" State v. Johnson, 36 Ohio St.3d 224, 226, quoting Kidder, supra, at 282-283.
 {¶ 24} Here, defendant argues that the distinction between gross sexual imposition and sexual imposition is whether the victim was substantially impaired because of a mental or physical condition, i.e., sleep. He argues that the jury may have reasonably concluded that sleeping is not a physical condition that substantially impaired the victim's ability to resist and still have found him guilty of sexual imposition. However, like gross sexual imposition, sexual imposition requires similar evidence in that the State must prove that the offender knew the victim's ability to appraise the nature of or control the offender's conduct is substantially impaired. Thus, the trier of fact could not reasonably conclude that the victim's ability to resist was not substantially impaired by a physical condition (sleep) and then also find that the victim's ability to control his conduct was substantially impaired by her sleep. If the jurors determined that sleep was not a substantial impairment, this would result in acquittal under either offense.[1]
 {¶ 25} Assignment of Error II is overruled.
 {¶ 26} "III. The trial court erred when it overruled appellant's motion to dismiss Count One of the indictment."
 {¶ 27} Count One of the indictment charged defendant with burglary. The content of the indictment tracked the statutory elements of burglary contained in R.C. 2911.12(A)(1), including that defendant trespassed in an occupied structure with the purpose to commit a criminal offense.[2] Defendant contends that the trial court should have dismissed the burglary charge because the indictment did not specify what underlying offense defendant intended to commit. This, he claims, denied him due process on the alleged basis that it created a risk he would be convicted of an offense on evidence not presented to the Grand Jury. We have rejected this argument in State v. Rivers,
Cuyahoga App. No. 83321, 2004-Ohio-2566, ¶ 26.
 {¶ 28} It is well settled that an indictment for burglary is not improper if it does not designate the specific underlying felony intended to be committed. Id; State v. Conway (Jan. 18, 2001), Cuyahoga App. No. 77436, citing State v. Colegrove
(1998), 123 Ohio App.3d 565; State v. Fields (March 5, 1992), Cuyahoga App. No. 60022. It is irrelevant whether or not any underlying crime was committed. Id. The indictment alleged every element necessary to sustain a conviction for burglary.
 {¶ 29} Assignment of Error III is overruled.
 {¶ 30} "IV. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that appellant was guilty of gross sexual imposition."
 {¶ 31} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 32} Defendant argues that the State failed to present sufficient evidence of gross sexual imposition such that the trial court erred by denying his motion for acquittal on this count. Defendant contends that the State did not establish that the victim was substantially impaired because of a mental or physical condition; a necessary element of the offense contained in R.C. 2907.05(A)(5). The State counters that the evidence established that the victim was substantially impaired by the physical condition of being asleep. We agree.
 {¶ 33} Defendant urges us to find that sleeping is not a "mental or physical condition" sufficient to substantially impair a victim's ability to resist unwelcome sexual contact. He argues that the legislature intended to protect mentally retarded, developmentally disabled or physically impaired persons. We do not believe and can find no authority to support this limited interpretation of the statute. "Sleep" is defined as "the natural periodic suspension of consciousness during which the powers of the body are restored." Webster's Ninth New Collegiate Dictionary (1990). "Asleep" is defined as "lacking sensation: numb 
inactive * * * not alert * * * a state of inactivity, sluggishness, or indifference." Id. Applying these definitions, sleep qualifies as a mental or physical condition. It is well settled that sleeping qualifies as a substantial impairment. I.e., Byrd, supra; State v. Tolliver (July 31, 1997), Cuyahoga App. No. 71349. The evidence sufficiently establishes the necessary elements of gross sexual imposition and the trial court did not err by denying defendant's motion for acquittal on this count.
 {¶ 34} Assignment of Error IV is overruled.
 {¶ 35} "V. Appellant's convictions were against the manifest weight of the evidence."
 {¶ 36} A reviewing court may find a verdict to be against the manifest weight of the evidence even though legally sufficient evidence supports it. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 1997-Ohio-52. To warrant reversal from a verdict under a manifest weight of the evidence claim, this Court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 37} Defendant believes his convictions are against the manifest weight of the evidence based on the identification procedure and the testimony of the State's witness concerning their recognition of defendant as the perpetrator. As set forth previously, the identification of defendant was reliable and reinforced by the fact that the family knew him prior to the time of the incident. The victim recognized him immediately, told the police who he was and how to find him. The cold stand was essentially a formality, since the victim had already identified defendant as the perpetrator. Further, the victim had no doubts about her identification of him. Accordingly, the verdict was not against the manifest weight of the evidence.
 {¶ 38} Assignment of Error V is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Michael J. Corrigan, J., and Patricia A. Blackmon, J.,concur.
[1] State v. Bryd, Cuyahoga App. No. 82145, 2003-Ohio-3958 (upholding conviction for gross sexual imposition arising from offender's touching of a sleeping victim).
[2] Because every element of burglary, as codified in R.C.2911.12, was set forth in the indictment and determined by a jury, the reasoning of Apprendi v. New Jersey (2000),530 U.S. 466 is inapplicable.